## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEANNA K. SIPP, | ) | CASE NO. 4:08CV84 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| MICHAEL J. ASTRUE, as | ) | AND ORDER |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This is an action for judicial review of a final decision by the Commissioner finding that the Plaintiff, Deanna K. Sipp, was not entitled to a waiver of recovery of the $63,406.90 in overpaid benefits she received in July 1998, August 1998, and July 1999 through March 2004, in connection with her prior award of disability insurance benefits under Title II of the Social Security Act ("the Act").  Section 205(g) of the Act provides for judicial review of the Commissioner's final decision.  This case returns to this Court following a remand, at the Commissioner's request, for a new decision by the Administrative Law Judge ("ALJ").  Although the Commissioner requested a sentence four remand, this Court remanded the case under sentence six and, therefore, this Court retained jurisdiction.

### FACTUAL BACKGROUND

In October 1994, Sipp applied for and was awarded disability insurance benefits by the Social Security Administration ("SSA") based on her profound bilateral hearing loss. (Tr. 19, 23.) In her application signed on October 3, 1994, Sipp agreed to notify the SSA if she returned to work, whether as an employee or self-employed. She also acknowledged that such work activity could affect her continued eligibility for benefits.  (Tr. 20-21.)  From

August 1995 through June 1996, Sipp worked for Lincoln Public Schools.  In 2004, Sipp reported those earnings to the SSA.  (Tr. 46.)  Her monthly earnings during the full months of employment with Lincoln Public Schools ranged from $264.20 to $420.18.  (Tr. 46-47.) In 1996, Sipp began working at Camp Taloali, and she worked at the camp every July and August from 1996 through 2001.  (Tr. 42-44.)  Sipp also did some work preparing for the summer camp beginning in April, May, and June each year.  (Tr. 468-69.)  Sipp's earnings from Camp Taloali totaled $325.00 monthly in 1996, $650.00 monthly in 1997, $1,062.50 monthly in 1998, $1,387.50 monthly in 1999, $1,562.50 monthly in 2000, and $1,727.50 monthly in 2001.[1]  (Tr. 42-44.)

In February 2002, Sipp stated in a Disability Update Report that she worked in July and August of 2000 and 2001, and her earnings for those months totaled $3,125.00 in 2000, and $3,455.00 in 2001.  (Tr. 180-81.)

In August 2003, Sipp completed a Work Activity Report in which she reported that she had worked 40 hours per week at Camp Taloali from June through August every summer from 1996 through 2001.  (Tr. 24-25.) She also reported that she began working at Oasis Staffing in April 2003, and that she continued to work there 24 hours weekly for $10.05 per hour.  (Tr. 25, 28.)

The August 2003 report triggered the SSA's investigation into Sipp's work activity. The investigation began in January 2004.  (Tr. 32.)  The SSA wrote to Lincoln Public Schools, Oasis Staffing, and Camp Taloali requesting information regarding Sipp's monthly

---

[1]Sipp began working at the camp as a nurse, although she was not a licensed nurse.  She was promoted to assistant director of the camp.  (Tr. 462, 475.)

2

earnings. (Tr. 32-33, 42-47.) The SSA also sent work activity reports to Sipp for her completion. (Tr. 48-55.)

In March 2004, the SSA notified Sipp that her disability had ended based on her work activity and earnings, she was no longer entitled to benefits, and she should not have been paid benefits for July and August 1998 and July 1999 through March 2004 because she performed "substantial" work during those months. (Tr. 58-68.) The SSA explained that Sipp's trial work period lasted from September 1995 through May 1996, and stated the following regarding how the SSA determines work is "substantial":

> Your disability ends if your work activity shows your ability to do substantial work. However, we pay benefits for the month disability ends and the following 2 months no matter how much is earned. Based on the information we have, in your case, this is July 1997 through September 1997.
>
> You get an extended period of eligibility that begins right after the trial work period. This is a 36 month period when we restart payments for any month(s) your work is not substantial if your health problems still meet our rules. Based on the information we have, your extended period of eligibility began June 1996 and has now ended.
>
> Generally, substantial work is physical or mental work a person is paid to do. Work can be substantial even if it is part-time. To decide if a person's work is substantial, we consider the nature of the job duties, the skill and experience needed to do the job, and how much the person actually earns.
>
> . . . .
>
> Usually, we find that work is substantial if gross monthly earnings average more than the following amounts:

| | |
|---|---|
| In 2004 | -$810 |
| In 2003 | -$800 |
| In 2002 | -$780 |
| In 2001 | -$740 |
| July 1999 through December 2000 | -$700 |
| January 1990 through June 1999 | -$500 |
| Before January 1990 | -$300 |

3

You will be notified later about any overpayment or underpayment due in this case.

(Tr. 59-60.)

In July 2005, the SSA notified Sipp of its overpayment of $63,406.90 in disability benefits and the SSA's decision that Sipp was able to work.  (Tr. 78-81.)  The notice advised Sipp of her right to appeal the overpayment determination within sixty days, how to file an appeal, and how to obtain an attorney.  (Tr. 79-80.)  The notice also advised Sipp of her right to request a waiver of recovery of the overpayment and how to do so.  (Tr. 79.)  The notice stated that Sipp had the right to request a waiver if: 1) the overpayment was not her fault "in any way"; and 2) she could not meet her necessary living expenses if SSA recovered the overpayment, or if recovery of the amount would be unfair for some other reason.  (Tr. 79.)  Finally, the notice advised Sipp that she could contact the SSA if she had questions or needed more information.  (Tr. 79, 81.)

In August 2005, Sipp completed a request for waiver of overpayment form.  (Tr. 82-89.)  In completing the form, she stated: the overpayment was not her fault; she could not afford to pay the money back; and/or the overpayment was unfair for some other reason.  (Tr. 82.)  She added that she was not at fault because she "worked for only 5 weeks in July 1997" and she did not remember whether she told SSA that she returned to work.  (Tr. 83.)  Sipp did not complete a request for reconsideration, or appeal from, the determination that the overpayment was made.

In March 2006, SSA advised Sipp that it intended to deny her waiver request.  Before the decision would become final, however, SSA scheduled times for Sipp to review her file and to have a personal conference with SSA to discuss the intended denial.  (Tr.

4

93-94.) Sipp, her husband, and her daughter appeared at the conference. Sipp's daughter served as an interpreter.  During the personal conference, Sipp stated that she was confused by the applicable rules and regulations, which the SSA representative considered "understandable."  The SSA's report of the conference, however, noted that despite Sipp's statements that she reported her work at Lincoln Public Schools and Camp Taloali in a timely manner, her first written report to SSA of her work activity was submitted in August 2003.   (Tr. 136.)  Moreover, Sipp's reported financial situation showed that she could begin to repay the overpaid amount.  Therefore, the SSA's final decision after the personal conference was that Sipp's waiver request was denied because she could not prove that she was without fault and financial hardship was not a factor.  (Tr. 136-37.)  SSA notified Sipp that it had denied her waiver request, and that she had the right to request review and a hearing before an ALJ.  (Tr. 137.) In June 2006, Sipp, through her attorney, completed a request for a hearing in which Sipp again stated that she believed she was "entitled to the relief of waiver of overpayment because it was not my fault and repaying the money would create an extreme hardship on my family and me."  (Tr. 139.)  Again, Sipp only argued that she was entitled to a waiver and did not raise any challenge to the existence of the overpayment.  (*Id.*)

In May 2007, Sipp's attorney submitted a pre-hearing memorandum to the ALJ stating the issue to be argued as whether she was entitled to a waiver of overpayment. In support, SIPP argued her lack of fault in receiving the overpayment and hardship that would make it impossible for her to repay the amount. (Tr. 151-52.)  SIPP did not raise the issue of the existence of the overpayment.

5

In June 2007, SIPP and her attorney appeared for an administrative hearing before ALJ Emily Cameron Shattil.  (Tr. 202-21.)  An interpreter was present.  (Tr. 204.)  At the hearing, SIPP did not raise a challenge to the overpayment's existence.  SIPP testified that the February 2002 report was her first written report of her work activity.  (Tr. 208-09, 216-17.)  SIPP also testified that she "thought" she called SSA when she worked for nine months in 1995 and 1996, during her trial work period.  (Tr. 217-18.)  SIPP was admittedly very confused about what she reported and when she reported.  Yet she answered "[y]es, I did" to the following question posed by her attorney:

> [Y]of said that you would call them when you'd have a change in the amount of work that you did, in the amount of time that you did work and also when you received a raise.  To the best of your memory, is that what you did, called them each time you had a change in your employment?

(Tr. 219.)

The following colloquy followed:

> Q    During that period of time, you also received several notices from Social Security that they were changing your benefits because of your employment, is that right?
> A    They changed my, they changed because, he told you that, yes.
> Q    Did that lead you to believe, then, that Social Security knew that you were working?
> A    Yes.  Yes I, that's –

(*Id.*)

By "notices," Sipp refers to letters and notices from SSA dated: September 3, 2000 (notice of an overpayment of $2,373.00 and benefit reduction notice for specific periods of time since 1995) (Tr. 160-63); September 19, 2000 (acknowledgment of Sipp's request that SSA not collect the overpayment, and notice that Sipp's newly calculated benefit was $898.00 per month) (Tr. 164-65); May 24, 2001 (reflects Sipp would not have to repay

6

money paid "in error" and a newly calculated benefit amount of $926 per month) (Tr. 166-67); January 30, 2002 (reflecting a newly calculated monthly amount of $948.00, after deduction for medical insurance premium) (Tr. 170-71); December 6, 2002 (reflecting a newly calculated monthly amount of $958.00, after deduction for medical insurance premium) (Tr. 172-73); August 17, 2003 (stating Sipp would receive a check for $3,672.00 representing the money due through May 2003, and reflecting a newly calculated monthly amount of $998.00) (Tr. 174-76); and May 17, 2004 (stating SSA was notified of a reported change in work and earnings and she was no longer eligible for social security payments). (Tr. 178.)

## PROCEDURAL BACKGROUND

The ALJ issued an unfavorable decision finding Sipp was not entitled to a waiver of her overpayment. (Tr. 11-18.) The ALJ found that Sipp was not entitled to waiver because she was not "without fault" as she failed to report work activity that she either knew or should have known to be material to her continued receipt of benefits. (Tr. 17.) However, the ALJ's decision did not discuss Sipp's February 2002 work report. (Tr. 180-81.) Sipp requested a review by the Appeals Council, stating that she was without fault and repayment would create an undue hardship. (Tr. 9-10.) Sipp's attorney submitted a brief to the Appeals Council arguing only that Sipp was entitled to a waiver of overpayment, arguing the matters of fault and hardship. (Tr. 192-97.) Sipp's attorney acknowledged in her memorandum that Sipp had in fact received an overpayment from the SSA of $63,407. (Tr. 193.) After the Appeals Council denied her request for review, Sipp retained a different attorney and filed this case on February 27, 2008, seeking judicial review of the Commissioner's decision. (Filing No. 1.) In her Complaint, Sipps asks the Court to reverse

7

and "set aside" the Commissioner's decision based on the amount of overpayment and her lack of fault. (*Id.*, ¶ 8.)  In August 2008, Sipp's supporting brief was filed.  More than half of the legal argument section of the brief was devoted to the issue of the existence of the overpayment that Sipp raised for the first time.  (Filing No. 16, at 8-18.)  Sipp also raised issues relating to the ALJ's alleged failure to develop the record.  (*Id.*, at 18-22.)  Finally, Sipp devoted a small portion of her argument to the issue that had previously been the primary focus--the issue of fault in reporting work activity.  (*Id.*, at 22-24.)

In November 2008, the Commissioner requested a sentence four remand after discovering that the ALJ had failed to consider Sipp's February 2002 report of work activity.[2]  (Filing No. 22.)  Sipp's attorney objected and requested a remand under sentence six.[3]  The Court granted the remand under sentence six, stating:

---

[2]Sentence four of 42 U.S.C. § 405(g) states that a district court may affirm, modify, or reverse the Commissioner's decision with or without a remand for a new hearing.

[3]A sentence six remand is primarily distinguishable from a sentence four remand in the following ways: under sentence six the district court maintains jurisdiction; and a sentence six remand does not determine the court's action with respect to the ALJ's decision.  *Travis v. Astrue,* 477 F.3d 1037, 1039 (8th Cir. 2007).

Sentence six allows for a remand only under two "limited" situations, one of which is "where new and material evidence is adduced that was for good cause not presented during the administrative proceedings."  *Buckner v. Apfel,* 213 F.3d 1006, 1010 (8th Cir. 2000.)  A situation in which the ALJ fails to consider evidence that was in the record at the time of the hearing is not "new evidence," and therefore a remand in this situation should be made under sentence four.  *Ingram v. Commissioner,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Hoffman v. Astrue,* 259 Fed. Appx. 213, at **6 (11th Cir. 2007); *Flores v. Shalala,* 49 F.3d 562, 569 (9th Cir.1995); *Young v. Sullivan,* 972 F.2d 830, 835 (7th Cir. 1992).

With respect to a district court's review of additional or modified findings of fact or conclusions of law in an ALJ's decision following a sentence six remand, "[the Commissioner's] additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision."  42 U.S.C. § 405(g).

> In a typical sentence-six remand, "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."  In the instant case, although the evidence was available to the claimant, the ALJ simply failed to consider the evidence in making her final determination.  While these are not the usual factual circumstances that warrant a reversal and remand pursuant to sentence six of Section 405(g), the Commissioner's Motion to Reverse and Remand suggests a substantial likelihood that the neglected "evidence might have changed the outcome of the prior proceeding."  The Court, therefore, finds good cause to remand the cause for a rehearing and consideration of the relevant evidence that both Plaintiff and Defendant acknowledge that the ALJ failed to consider.

(Filing No. 24, at 2-3 (citation omitted).)

The Court also directed the Appeals Council "to direct the ALJ to fully consider the February 2002 Disability Update Report and any other relevant evidence included in the record the ALJ neglected to consider in her previous evaluation." (*Id.* at 3.)  Finally, the Court stated that "when this matter returns to the Court for judicial review of the ALJ's final decision, Plaintiff will not be precluded from raising any of the issues she initially raised in her Brief (*see* Filing No. 16) – even if the ALJ should fail to address them on remand."  (*Id.*)

In remanding the case to the ALJ, the Appeals Council stated: "[u]pon remand, the Administrative Law Judge will [g]ive further consideration to the issue of whether the claimant was without fault with respect to her overpayment . . . .  In so doing, [the ALJ will] evaluate the Disability Report Update dated February 25, 2002."  (Filing No. 308.)

In July 2009, the ALJ held a supplemental hearing at which the ALJ framed the issue as whether recovery of the overpayment can be waived after considering whether Sipp was at fault with respect to the matter of overpayment and, if so, whether hardship exists.  (Tr. 451.)  An interpreter was present.  Sipp's attorney argued that the issues

9

should be expanded to include the existence of the overpayment.  (Tr. 452.)  The ALJ

responded that Sipp was timely advised of her right to request reconsideration when it

notified her of the overpayment in July 2005, and that she simply failed to request

reconsideration.  (Tr. 452.) The ALJ also observed that Sipp had not pursued a challenge

to the overpayment until 2008, when her current attorney raised the issue in a brief to this

Court.  (Tr. 452.)  Based on her failure to pursue a timely challenge to the existence of the

overpayment, the ALJ determined that the issue was not properly before her.  (Tr. 452-53.)

The ALJ also noted the Appeals Council's remand order that limited the issues to waiver

of the overpayment based on lack of fault and hardship.  (Tr. 453.)

At the hearing, Sipp testified to her expenses.  (Tr. 456-57.)  She testified that she

was working forty hours per week.  (Tr. 457.)  Sipp testified that she worked for the Lincoln,

Nebraska Public Schools after she was found to be disabled and babysat for her

grandchildren in her home.  (Tr. 461.)  She later worked at Camp Taloali as a nurse for

several years,[4] scheduling medications for the campers and performing minor first aid.  (Tr.

462-63.)  Sipp's husband worked as manager and later as director of the camp, and they

lived in a home on the camp site.  (Tr. 475.)  Most of the camp staff could use sign

language.  (Tr. 462.)  Sipp was promoted to assistant director of the camp.  (Tr. 467.)

Work at the camp lasted from April through July or August.  (Tr. 468.)  Her pay increased

each year.  (Tr. 476.)  Sipp testified that she first worked at camp in 1996, she was paid

for her work, and she called the Social Security office[5] to say she was working at the camp

---

[4]Sipp is not a licensed nurse.  Rather, she had CPR and first aid training.  (Tr. 462.)

[5]Sipp did not know whether she called the 800 number or the local Salem, Oregon office.  (Tr. 480.)

"every" summer.  (Tr. 470, 473.)  Sipp testified that when asked she told the person she communicated with how much she was earning.  At some point, Sipp did go to the Salem Social Security office in person. (Tr. 472.) Sipp also stated that on February 25, 2002, she completed a work activity report sent to her by The SSA.[6] (Tr. 180-81, 479.)  Sipp and her husband now have income from Social Security for his disability as well as from her work. (Tr. 477-78.)

In August 2009, the ALJ issued a decision in which she found Sipp was not entitled to a waiver of her overpayment.  (Tr. 246-55.) The ALJ concluded that Sipp was not without fault in the matter of her overpayment because: before February 25, 2002, she did not give the SSA information about her work that she knew or should have known was material; and after February 2002, she accepted benefits to which she knew or should have known she was not entitled.  (Tr. 254.)  Finally, the ALJ again stated that the issue regarding the existence of the overpayment was not before her and, therefore, her decision was limited to the waiver issue.  (Tr. 253-54.)

In January 2010, the Appeals Council denied Sipp's request for review.  Therefore, the ALJ's August 2009 decision is the Commissioner's final decision.  (Tr. 222-23.)

### DISCUSSION

---

[6]Sipp's testimony differs from her testimony at her first hearing before the ALJ.  In 2007, she testified that she called Social Security each time her employment changed.  (Tr. 219.)  At the second hearing in 2009, she stated that the call and completed forms was the entirety of her communication with the SSA.  (Tr. 479.)  The Court notes that Sipp apparently completed an additional work activity report reflecting her work as a babysitter; however, the report is undated.  (Tr. 51-54.)  Sipp's testimony at the second hearing is also inconsistent with her statement in her request for overpayment recovery form completed on August 12, 2005.  In completing the form, Sipp stated she did not remember whether she told the SSA about the work that resulted in the overpayment.  (Tr. 83.)

11

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*.  *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005.)  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the ALJ's decision and, if so, to affirming that decision.  *Id.*

"Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's determination."  *Id.* (citing *Sultan v. Barnhart*, 368 F.3d 857, 862 (8th Cir. 2004)).  The Court must consider evidence that supports the ALJ's decision, as well as evidence that detracts from the ALJ's decision.  *Id.* As long as substantial evidence on the record as a whole supports the ALJ's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion.  *Stormo v. Barnhart,* 377 F.3d 801, 805 (8th Cir. 2004).

Although Sipp raises additional issues,[7] the following matters are the only issues now before the Court: whether Sipp is barred from challenging the overpayment decision; and whether the Commissioner was correct in determining that Sipp was not entitled to a waiver of recovery of the overpayment.

### Whether Sipp is Barred From Challenging the Overpayment Decision

42 U.S.C. § 405(g) limits judicial review in social security cases to a "final decision" of the Commissioner.  A "final decision" is one that has been issued after completion of all

---

[7]The Court is mindful of its earlier order stating that Sipp may raise any issues at this stage, even if the ALJ did not address those issues.  However, upon further and complete consideration of the record and the law relating to sentence six remands, the Court declines to address issues that are beyond the scope of a sentence six remand and have not been exhausted during the administrative process.

12

administrative steps.  20 C.F.R. § 404.900(a).  Social Security regulations specify the procedure to be followed by a claimant who is dissatisfied with the Commissioner's overpayment decision.  Briefly, the procedure includes a request for reconsideration, a hearing before an ALJ, review by the Appeals Council, and judicial review.  20 C.F.R. §§ 404.902, *et seq*.  Following this process results in exhaustion of administrative remedies. *Connell v. Bowen,* 888 F.2d 1250, 1251 (8th Cir. 1989).  With respect to equitable tolling in the social security context:

> "Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."

*Medellin v. Shalala,* 23 F.3d 199, 204 (8th Cir. 1994) (quoting *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96 (1990) (emphasis deleted)).

In Sipp's case, the record shows that she received an overpayment notice from SSA stating the amount of overpayment and advising Sipp how she could appeal the overpayment decision or request a waiver of the overpayment recovery.  However, the record shows that SIPP did not raise the issue in a timely manner or in the appropriate forum.  Rather, she waited until June 2008 to raise the issue when her case was on appeal before this Court.  Therefore, because she failed to pursue her administrative remedies, the overpayment decision became binding and is not subject to judicial review.  42 U.S.C. § 405(g); *Medellin,* 23 F.3d at 202.  The record, which shows that Sipp knew of her duty to report her earnings, does not support the application of the equitable tolling doctrine.

13

For these reasons, the Court concludes that Sipp is now barred from challenging the overpayment decision.

***Whether Sipp is Entitled to a Waiver of the Overpayment Recovery***

Sipp argues that the ALJ erred in determining that she was not "without fault" in causing the overpayment and, therefore, she was not entitled to a waiver of her overpayment.

The Act provides that when the Commissioner "finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made" under prescribed regulations.   42 U.S.C. § 404(a)(1).   The Act also provides:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

42 U.S.C. § 404(b).

The applicable[8] social security regulation defines "fault" as follows:

> In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault . . . on the part of the overpaid

---

[8]Distinguishable are regulations and statutes relating to "deduction overpayments." *See, e.g.,* 20 C.F.R. §§  404.510, 404.511.  Sipp's case involves an alleged "entitlement overpayment."  *See generally Gladden v. Callahan,* 139 F.3d 1219 (8th Cir. 1998); *see also* 20 C.F.R. § 404.510a.

individual . . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

Even if the SSA is at fault for making an overpayment, the individual in question is liable for repayment if the individual is not without fault in causing the overpayment. *Id.* Finally, a plaintiff has the burden of proof. *Coulston v. Apfel,* 224 F.3d 897, 900 (8th Cir. 2000). If a plaintiff meets the burden, the Court must determine whether repayment would defeat the purpose of providing social security benefits to the individual or would be against equity and good conscience. *Id.* at 900-01.

Turning to Sipp's case, in her disability insurance application signed on October 3, 1994, Sipp agreed to timely notify the SSA if she returned to work and acknowledged that such work activity could affect her continued eligibility for benefits. Yet, although Sipp worked from August 1995 through June 1996 for Lincoln Public Schools, she did not report those earnings until 2004. Moreover, only in 2002 did Sipp provide The SSA with information regarding her work at Camp Taloali in July and August of 2000 and 2001. Sipp did not report that she had worked at the camp summers since 1996. (Tr. 180-81.) Sipp testified that she also did some work preparing for the summer campers beginning in April,

15

May, and June each year.  Only in 2003 did Sipp report her work from 1996 through 2003, and this report launched the SSA's investigation into Sipp's work activity.

Sipp's written and oral statements to SSA regarding her employment are contradictory.  Her testimony that she reported employment by telephone is uncorroborated by notes or other evidence.   Even assuming that she reported her employment telephonically, there is no indication that telephonic communication satisfies the SSA's requirements.  The record does not support Sipp's recent claim that she timely reported her work activity.  Moreover, even assuming for the sake of argument that Sipp timely reported her work activity and SSA was at fault for promptly terminating her benefits, Sipp continued to cash her disability checks without contacting SSA to confirm her continued eligibility to receive benefits.   Therefore, Sipp was not "without fault" in causing her overpayment, and she is not entitled to a waiver of the overpayment recovery.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

IT IS ORDERED that the decision of the Commissioner is affirmed, the appeal is denied, and a separate Judgment in favor of the Defendant will be entered.

DATED this 2nd day of August, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

16